UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEANETTE S. U.,

                                        Plaintiff,

v.                                                              3:18-CV-01045 (DNH/TWD)

ANDREW SAUL,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,[1]

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC             JUSTIN GOLDSTEIN, ESQ.
  *Attorney for Plaintiff*
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226


SOCIAL SECURITY ADMINISTRATION                  PADMA GHATAGE, ESQ.
OFFICE OF REGIONAL GENERAL
COUNSEL, REGION II
  *Attorney for Defendant*
26 Federal Plaza - Room 3904
New York, New York 10278


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**REPORT AND RECOMMENDATION**

    This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  (Dkt. Nos. 9, 13.)  Oral argument was not heard.  For the reasons discussed below, the Court recommends the Commissioner's decision be affirmed and the complaint (Dkt. No. 1) be dismissed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Jeannette U. ("Plaintiff") was born in February 1962.  On September 22, 2014, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") alleging disability as of September 13, 2012.  (Administrative Transcript at 62.[2])  Plaintiff alleged disability due to right shoulder arthroscopy and bulging discs in her neck.  (T. 194.)  The application was denied on December 12, 2014.  (T. 69, 72.)  Thereafter, Plaintiff filed a written request for a hearing on January 29, 2015 (T. 76), and then, by and through her attorney Matthew Nutting, amended the alleged onset date to December 6, 2013.  (T. 257.)  A hearing was held on December 6, 2016, before Administrative Law Judge ("ALJ") John Ramos.  (T. 42-61.)  At the hearing, Attorney Nutting represented Plaintiff.  (*Id.*)  A supplemental hearing was held on March 23, 2017, to elicit testimony from Linda Voss, a vocational expert ("VE").  (T. 29-41.)  Attorney Nutting represented Plaintiff at that hearing as well.  (*Id.*)  On April 26, 2017, the ALJ issued a decision finding Plaintiff was not disabled.  (T. 15-23.)

The ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") when the Appeals Council denied Plaintiff's request for review on July 2, 2018.  (T. 1-5.)  Plaintiff timely commenced this action on September 4, 2018, challenging the Commissioner's decision.  (Dkt. No. 1.)

---

[2]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.  All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

II.    **APPLICABLE LAW**

A.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.    Standard for Benefits[3]**

To be considered disabled, a plaintiff-claimant seeking SSDI benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

---

[3] **The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."** ***Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).**

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.*

## III.    THE ALJ'S DECISION AND THE PARTIES' CONTENTIONS

At step one of the sequential analysis, the ALJ found Plaintiff was not engaged in

substantial gainful activity.  (T. 17.)  Proceeding to step two, the ALJ determined Plaintiff had

the following severe impairments: degenerative disc disease of the cervical spine and

degenerative joint disease of the right shoulder.  (T. 17-18.)  At step three, the ALJ determined

that Plaintiff's impairments did not meet or medically equal the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, app'x. 1 (the "Listings").  (T. 18.)

Thereafter, the ALJ, "[a]fter careful consideration of the entire record," concluded that

Plaintiff had the residual functional capacity ("RFC") to perform light work except:

> [she] can only occasionally reach, push, pull, and carry objects up
> to ten pounds with the right arm; can frequently handle, finger, and
> feel with the right and left hand; and can only occasionally move
> her head from side to side or up and down.  [She] has no other
> exertional limitations.

(T. 18.)  In reaching the RFC conclusion, the ALJ afforded "significant weight" to the opinion of

Tanya Perkins-Mwantuali, M.D. ("Dr. Perkins-Mwantuali"); "some weight" to the opinions of

Jennifer O'Reilly, M.D. ("Dr. O'Reilly"), Tally E. Lassiter, M.D. ("Dr. Lassiter"), Michael

Zahn, M.D. ("Dr. Zahn"), Stephanie Higby, P.A. ("PA Higby"), Rudolph Buckley, M.D. ("Dr.

Buckley"), and Brian Berry, P.A. ("PA Berry"); "little weight" to the opinions of Patrick

Connolly, M.D. ("Dr. Connolly") and Louis Nunez, M.D. ("Dr. Nunez"); and "no weight" to

various statements regarding the Plaintiff's percentage of disability noted by her health providers

for Workers' Compensation purposes.  (T. 20-22.)

Given Plaintiff's RFC and based upon the testimony of VE Voss, the ALJ found Plaintiff

could perform past relevant work as a customer service representative.  (T. 22.)  Therefore, the

ALJ concluded at step four that Plaintiff was not disabled, as defined in the Social Security Act,

from December 6, 2013, through the date of his decision.  (T. 23.)

In support of her action, Plaintiff makes three principal arguments: (1) the RFC is not

supported by substantial evidence; (2) the ALJ failed to follow the treating physician rule and

improperly discounted medical opinions of Plaintiff's treating providers specifically focusing on

the opinions of Dr. O'Reilly, Dr. Zahn, and PA Higby; and (3) the ALJ failed to resolve a

conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  (Dkt.

No. 9.)  In response, Defendant argues that the ALJ applied the correct legal standards and

substantial evidence supports his decision.  (Dkt. No. 13.)

## IV.    RELEVANT OPINION EVIDENCE

### A.    Tanya Perkins-Mwantuali, M.D.

On November 25, 2014, Dr. Perkins-Mwantuali performed a consultative internal

medicine examination.  (T. 487-491.)  After a thorough examination of Plaintiff, Dr. Perkins-

Mwantuali opined Plaintiff had mild limitations with fine motor activity and use of the right

hand, objective limitation with gross motor activity, marked limitation of lifting, pushing,

pulling, reaching and carrying with the use of the right arm, and moderate to marked limitation

with range of motion of the cervical spine.  (T. 490.)  The ALJ assigned significant weight to this

opinion.  (T. 20-21.)

### B.    Michael Zahn, M.D. and Stephanie Higby, P.A.

Plaintiff treated with several providers at Hamilton Orthopaedic & Sports Medicine for

her right shoulder and cervical spine complaints.  (T. 368-486, 492-501, 627-635.)  Dr. Zahn,

who treated Plaintiff for her right shoulder complaints and performed arthroscopic surgery on

her shoulder on August 29, 2013 (T. 334-341), provided two source statements dated December

24, 2014 (T. at 494-495), and December 9, 2016.  (T. 628-634.)  PA Higby also provided a

December 24, 2014, opinion.  (T. 492-493.)  In the December 24, 2014, opinions, Plaintiff was

noted to be status post right shoulder arthroscopy and she had C3-4 and C6-7 disc bulges with

mild loss of lordosis and mild degenerative changes.  (T. 492, 494.)  Plaintiff was capable of

working full time.  (*Id.*)  She could not perform any reaching above shoulders or work at

protected heights, but she could squat and bend 50% of the time.  (T. 493.)  She had a 25%

limitation with walking, standing, sitting, stairs, and working around machinery. (*Id.*) She could push, pull, carry, and lift 0 to 10 pounds; and she had no limitations with finger dexterity, hearing, vision, and environmental issues, and no limitations using both legs, feet, arms, and hands. (*Id.*) The ALJ assigned some weight to these opinions. (T. 21.)

In his December 9, 2016, source statement, Dr. Zahn noted he treated Plaintiff "only for a right shoulder problem" (emphasis in original) such that he did not assess several of Plaintiff's functions including her need to take unscheduled breaks; her ability to tolerate stress; her need to shift positions; and her ability to walk, sit, stand, twist, stoop, crouch/squat, climb ladders or stairs, or move her head. (T. 628-629.) Dr. Zahn indicated her prognosis was good, and she did not need to have her legs elevated with prolonged sitting, nor did she need a cane to walk. (*Id.*) He opined Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; she could frequently use her hands to grasp, turn, and twist objects; she could frequently do fine finger manipulations; and she could occasionally reach with her arms. (T. 629-630.) The ALJ also assigned some weight to this opinion. (T. 21.)

### C.    Jennifer O'Reilly, M.D.

Plaintiff treated with several providers for primary care in the Bassett Healthcare Network. (T. 270-281, 356-358, 502-504, 529-626.) In her source statement dated February 6, 2013, Dr. O'Reilly stated Plaintiff could return to work full time at light duty with no overhead activity and no lifting greater than 40 pounds. (T. 281.) However, in her source statement dated October 31, 2016, Dr. O'Reilly opined Plaintiff would need to change positions "ad lib" and could sit for 15 minutes and stand for 20 minutes at a time, with a total of sitting about four hours per day and standing/walking about four hours per day, yet she found Plaintiff to have no limitations with walking. (T. 502.) She also opined Plaintiff would need to take unscheduled

breaks every hour.  (T. 503.)  Plaintiff could occasionally lift and carry less than ten pounds;

occasionally maneuver her head; occasionally twist, stoop, couch/squat; and occasionally climb

ladders and stairs.  (*Id.*)  Dr. O'Reilly further opined Plaintiff could rarely use her hands to grasp,

turn or twist objects, and reach overhead with her arms, but Plaintiff could frequently do fine

manipulations with her hands.  (T. 503-504.)  The ALJ gave some weight to these opinions.  (T.

21.)

## V.    ANALYSIS

### A.    Residual Functional Capacity

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id*.

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'"

*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,

2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth

with sufficient specificity to enable [the Court] to decide whether the determination is supported

by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (quotation marks omitted).

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the

claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. § 404.1527(c)(1)-(6).

> **B.      Challenges to the ALJ's RFC Determination**

Plaintiff contends that in determining the RFC, the ALJ: (1) erroneously analyzed raw medical data and failed to sufficiently show support in the medical records for the RFC finding; (2) failed to show support for the RFC through Plaintiff's reported activities; and (3) failed to properly assess the opinion evidence.  (Dkt. No. 9 at 12-23.)

> **C.      Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

As an initial matter, the ALJ's decision includes detailed consideration of the medical opinions and related treatment notes, consistent with the requirements of 20 C.F.R. § 404.1527. (T. 19-22.)  Further, the ALJ adequately considered the various limitations (and lack thereof) identified in the medical opinions, and sufficiently explained the specific weight he afforded to each opinion.  (T. 20-22.)  The ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, No.7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).  Thus, in formulating Plaintiff's RFC, the ALJ was not required to accept every limitation in the opinions of treating providers Dr. O'Reilly, Dr. Zahn, or PA Higby nor craft an RFC that mirrored any of the medical opinions.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole."); *Zongos v. Colvin*, No. 5:12-cv-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion, but not to another portion); *see also Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a small part of treating physician's report). While the ALJ is not "permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion," *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000), the ALJ may "choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), including the report of a consultative physician. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).

Here, the ALJ expressly relied not on his lay opinion but rather the opinions of record as well as "the claimant's clinical findings, treatment history, and reported abilities." (T. 22.) The administrative record demonstrates the ALJ's decision to give significant weight to the opinion of consulting examiner Dr. Perkins-Mwantuali was well supported; and the ALJ's decision not to give controlling weight to Dr. O'Reilly's opinion or the opinions of Dr. Zahn and PA Higby under the "treating physician" rule was proper considering the substantial evidence contradicting some of their assessments.

1.   The opinion of Dr. Perkins-Mwantuali supports the RFC.

 Dr. Perkins-Mwantuali, as noted above, opined that Plaintiff had mild limitation with fine motor activity and use of the right hand, objective limitation with gross motor activity, marked limitation of lifting, pushing, pulling, reaching and carrying with the use of the right arm, and moderate to marked limitation with range of motion of the cervical spine. (T. 490.) The ALJ properly assigned significant weight to this opinion (T. 20-21) since Dr. Perkins-

Mwantuali is an acceptable medical source who examined claimant.  *See* 20 C.F.R. §

404.1527(c)(1) (more weight given to examining sources).  She is also familiar with the

Commissioner's disability programs.  *See* 20 C.F.R. § 404.1527(c)(6).

Further, Dr. Perkins-Mwantuali's opinion is supported by her examination results,

including that Plaintiff had a normal gait and stance, could walk on heels and toes without

difficulty, needed no help getting on and off the table and could rise from her chair without

difficulty.  (T. 488.)  Plaintiff also had full flexion of the lumbar spine, left shoulder, elbows,

wrists bilaterally, and knees and ankles bilaterally; and she had normal reflexes in her upper

extremities.  (T. 489.)  Sitting straight leg raising was negative on the right, and she could

straighten the left leg before exhibiting any back pain.  (*Id.*)  Hip internal and external

rotations were full bilaterally, and she had full range of motion in her knees and ankles.  (*Id.*)

Plaintiff had 4/5 strength in her right arm and full strength in her left arm and both legs,

without muscle atrophy; she had 4/5 grip strength on the right and full grip strength on the left.

(T. 490.)

Dr. Perkins-Mwantuali's opinion is also consistent with Plaintiff's medical treatment,

as discussed below, as well as other opinions in the record including the opinion of examiner

Dr. Connelly, who examined Plaintiff in the context of her Workers' Compensation claim.  He

opined that Plaintiff was capable of full employment in a light labor position.  (T. 518.)

Treating source Dr. Zahn's December 9, 2016, opinion pertaining only to his treatment of

Plaintiff's right shoulder also comports with Dr. Perkins-Mwantuali's opinion because Dr.

Zahn opined Plaintiff could lift 20 pounds occasionally and ten pounds frequently, could

frequently perform gross and fine manipulation, and could occasionally reach.  (T. 628-30.)

Treating source Dr. O'Reilly's opinion that Plaintiff could frequently perform fine

manipulations and occasionally look down or up or turn her head right or left likewise is

consistent with Dr. Perkins-Mwantuali's opinion. (T. 502.) Considering these opinions, the

ALJ properly limited Plaintiff to light work, limited to occasional reaching, pushing/pulling

and carrying up to ten pounds with the right arm, frequent handling, fingering and feeling with

both hands, and occasional head movement to the side, up and down. (T. 18, 20-21.)

2.  Plaintiff's treatment records support the RFC.

Treatment notes and diagnostic test results in the record also support the RFC. An

electromyography ("EMG") and electrodiagnostic study of Plaintiff's right upper extremity

completed on March 4, 2014, was within normal limits, and showed no evidence of right sided

radiculopathy at C5-T1, and no electrodiagnostic evidence of right ulnar nerve entrapment. (T.

352-355.) Cervical spine x-rays completed November 25, 2013, were unremarkable. (T. 429.)

An MRI of Plaintiff's cervical spine completed on December 6, 2013, showed some minimal or

mild disc bulging at the C3-4, C4-5, C5-6, and C6-7 levels and a small to moderate disc

herniation at the C3-4 level, however, there was no associated neural compromise at any level.

(T. 422-423.)

At the orthopedic service, Dr. Zahn performed ambulatory arthroscopic surgery on

Plaintiff's right shoulder on August 29, 2013, for evaluation and treatment of her shoulder

symptoms. (T. 334-341.) During a post-surgery physical therapy evaluation on September 12,

2013, Plaintiff was no longer using a sling, and she demonstrated normal arm swinging during

her gait. (T. 441.) Her right shoulder range of motion was painful and decreased, but she had

"full cervical range of motion with mild tightness in the upper trap area. Full elbow flexion and

extension and hand and forearm motion." (*Id.*) By May 21, 2014, her right shoulder range of

motion had increased, and her rotator cuff strength was 5/5. (T. 385.) On August 6, 2014, her

right shoulder exam revealed that she was able to forward flex to 170 degrees on her right compared to 180 degrees on her left, and abduction was 170 degrees on her right compared to 180 degrees on her left.  (T. 382.)  With her arm abducted to 90 degrees, external rotation on with both arms was the same at 90 degrees, but internal rotation was 60 degrees on the right compared to 80 degrees on the left.  (*Id.*)  Manual muscle testing of resisted forward flexion, abduction, internal and external rotation were all 5/5.  (*Id.*)

Regarding her cervical complaints, Plaintiff saw Dr. Buckley of the orthopedic service on December 9, 2013.  The exam showed no muscle tenderness or spasm, but Plaintiff had decreased range of motion of her cervical spine in all aspects.  (T. 420.)  Notably, passive and active range of motion of all extremities was intact and she exhibited a symmetrical gait without limp.  (*Id.*)  She was referred to pain management for her neck.  (*Id.*)  Exams on February 12, 2014, April 21, 2014, May 19, 2014, August 6, 2014, performed by PA Higby or PA Berry with Dr. Buckley countersigning the notes revealed the same findings.  (T. 380, 389, 395, 408.)  On November 10, 2014, Plaintiff's upper extremities on exam had full and active range of motion without pain or restrictions and her motor strength was 5/5.  (T. 499.)  She did exhibit mild decrease in sensation to touch in her right fourth and fifth digits, decreased range of motion in her cervical spine in all directions, with some tenderness to touch posteriorly.  (*Id.*)  However, her lower extremities on exam were completely normal and she had full active and passive range of motion without pain or restriction.  (*Id.*)

Plaintiff received primary care through Bassett Healthcare Network.  Dr. O'Reilly examined Plaintiff on February 27, 2013.  At that time, Plaintiff exhibited tenderness in the thoracic paraspinal muscles without spasm, but straight leg raising tests were normal.  (T. 279.)  Plaintiff had right arm tenderness with abduction testing, and a shoulder exam was difficult due

15

to her resistance and reported pain. (*Id.*) However, she could use her right arm to shift in her chair, pull her hair back, and carry a purse; she had normal coordination and normal muscle strength and tone. (*Id.*)

On March 5, 2014, after she had travelled to Sacramento, California, Plaintiff's musculoskeletal exam was negative for back pain or any gait problem. (T. 535.) Dr. O'Reilly found her to have normal range of motion in her neck, and normal range of motion on the remainder of the musculoskeletal exam. (Dkt. No. 532-533.) An exam by Dr. Tatli of Bassett Healthcare completed on April 17, 2014, revealed Plaintiff was able to heel and toe walk without significant unsteady gait, but she had some weakness in right shoulder adductor testing and some decreased range of motion of her cervical spine without radiculopathy. (T. 577.) However, muscle tone and strength were normal in her upper extremities. (*Id.*) Plaintiff's extremity exam and gait were found normal on May 7, 2014. (T. 583.) On June 19, 2014, she exhibited mild to moderate tenderness over the cervical facet joints, and her neck range of motion was somewhat restricted. (T. 587.) Testing was negative for radicular symptoms and muscle tone was normal, although sensation was slightly diminished over the right fourth and fifth digits. (*Id.*) On October 14, 2014, Plaintiff had a normal range of motion in her neck and her overall musculoskeletal exam was normal. (Dkt. No. 536.)

On January 15, 2015, Plaintiff's neck exam showed normal range of motion, she had no tenderness in her back, she had normal sensory and motor function, and her gait was stable. (T. 589.) On May 20, 2015, Plaintiff's musculoskeletal and neck exams by Dr. O'Reilly revealed normal range of motion, with no edema or tenderness. (T. 543.) On June 24, 2015, Plaintiff's extremities were found to be normal, her gait was normal, and her motor strength was normal and symmetrical. (T. 594.)

16

On January 30, 2016, her musculoskeletal exam revealed "grossly normal range of motion of all 4 extremities without any obvious pain or tenderness." (T. 602.)   On exams by Dr. O'Reilly on February 8, 2016, and February 18, 2016, she exhibited normal range of motion in her neck. (T. 547, 550.)  On October 12, 2016, Plaintiff's neck, extremity and neurologic exams were all normal; and she had a normal gait and normal motor strength. (T. 609.)

The Court finds the above-outlined records support the RFC, and as noted above the ALJ properly explained his reliance on the medical records and opinions in determining Plaintiff's RFC. (T. 20-22.)  The ALJ is not required to "expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  The Second Circuit noted in *Cichocki* that only where the reviewing court is "'unable to fathom the ALJ's rationale in relation to the evidence in the record,'" remand would be appropriate for further findings or clearer explanation for the decision. *Id.* (quoting *Berry v.* Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).  Here, the Court finds the ALJ's analysis regarding Plaintiff's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous. *Id.* (remand is not necessary merely because an explicit function-by-function analysis was not performed) (citations omitted).

**3.** The ALJ followed the substance of the treating physician rule.

Contrary to Plaintiff's contentions, the Court also finds the ALJ gave good reasons for the weight given to the various opinions, including the treating providers' opinions.  As noted above, under the Commissioner's regulations, the ALJ is required to give a treating source's

opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The regulations further state that "[w]hen we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give [Plaintiff's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Plaintiff asserts that all the opinions from her treating sources support a more restrictive RFC than the ALJ determined. (Dkt. No. 9 at 17-18.) However, on December 9, 2016, Dr. Zahn opined that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, frequently perform gross and fine manipulations, and occasionally reach. (T. 629.) He noted she would never need to miss work due to her right shoulder impairment and her symptoms should rarely interfere with attention and concentration. (T. 629-30.) Dr. Zahn also noted he was unable to address the other work functions, including the ability to sit, stand, and walk, because he had only treated Plaintiff's right shoulder impairment. (T. 628.) As noted above, Dr. Zahn's December 2016 opinion is consistent with the corresponding portions of Dr. Perkins-Mwantuali's opinion and the RFC. (*Cf.* T. 629-630 *with* T. 18, 488, 490.)

Dr. Zahn's December 9, 2016, opinion is also consistent with his notes of Plaintiff's treatment as outlined above. In Plaintiff's last visit to Dr. Zahn in August 2014, she had full range of motion on manual muscle testing of the right shoulder and she was able to forward flex to 170 degrees on her right compared to 180 degrees on her left, and abduction was 170 degrees on her right compared to 180 degrees on her left. (T. 382.) With her arm abducted to

90 degrees, external rotation on with both arms was the same at 90 degrees, but internal

rotation was 60 degrees on the right compared to 80 degrees on the left.  (*Id.*)  Likewise, on

November 10, 2014, Dr. Buckley and PA Berry found Plaintiff's upper extremities on exam

had full and active range of motion without pain or restrictions and her motor strength was

5/5.  (T. 499.)  Therefore, the ALJ properly gave some weight to Dr. Zahn's opinion as well.

Plaintiff also argues the December 24, 2014, opinions from Dr. Zahn and PA Higby

support remand because Plaintiff was found 50% limited in squatting/bending, 25% limited in

walking, standing, sitting, walking stairs, and working around moving machinery and could

lift, carry, push, and pull 0 to 10 pounds.  (Dkt. No. 9 at 17-18; T. 493.)  However, the Court

finds the ALJ properly gave only some weight to this opinion because PA Higby is not an

acceptable medical source, as the ALJ noted, and therefore her opinion is entitled to less

deference.  (T. 21.)  *See also* 20 C.F.R. § 404.1527(f); *Genier v. Astrue*, 298 F. App'x 105, 108

(2d Cir. 2008) (opinions of non-acceptable medical sources do not demand the same deference

as those of a treating physician) (citing *Mongeur*, 722 F.2d at 1039 n.2.

Moreover, while Dr. Zahn is an acceptable medical source, he noted in 2016 that he

had only treated Plaintiff's right shoulder impairment and therefore could not assess her

ability to walk, sit or perform postural movements.  (T. 628-29.)  He further opined in 2016

that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, in contrast to

his 2014 opinion.  (*Cf.* T. 493, 495 *with* T. 629.)  As such, the 2014 opinion was internally

inconsistent with Dr. Zahn's 2016 opinion.  *See* 20 C.F.R. § 404.1527(c)(3), (4)

(supportability and consistency); *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) ("A

physician's opinions are given less weight when his opinions are internally inconsistent.").

Additionally, the ALJ correctly noted Dr. Zahn's and PA Higby's December 24, 2014,

opinions are inconsistent with Dr. Perkins-Mwantuali's opinion and with Plaintiff's treatment notes outlined above. (T. 21, 490.) Dr. O'Reilly's October 31, 2016, restrictive opinion on which Plaintiff relies to support her claim of disability is likewise inconsistent with Dr. O'Reilly's own treatment notes and those of other providers at Bassett Healthcare Network. (T. 502-504.) As explained above, treatment notes clearly show Plaintiff generally had full strength and normal reflexes and sensation in the upper extremities. (T. 336, 360, 408, 416, 461, 468, 470, 484, 532, 536, 567, 543, 533, 562, 567, 589, 594, 602, 609.) As to her lower extremities, as the ALJ correctly noted, "[t]he record does not indicate that the claimant has difficulties sitting, standing or walking during most exams." (T. 21.) To the contrary, there are no records showing Plaintiff received treatment for her lumbar spine or lower extremities during the period at issue. To the extent the treatment notes address these areas, the results were normal. (T. 279, 499, 535, 577, 583, 589, 594, 602, 609.) For example, Dr. Buckley found Plaintiff had a normal flowing tandem gait; she could heel and toe walk without difficulty; she had negative bilateral straight leg raise testing; and she had full motor and intact sensation along with full active and passive range of motion without pain or restriction in her lower extremities. (T. 499.) Other notes showed Plaintiff to have a normal gait and coordination, the ability to heel and toe walk, and full range of motion in all extremities. (T. 272, 335-36, 380, 389, 395, 408, 413, 420, 432, 515, 535, 543, 553, 561, 657, 589, 594, 602. 609.) Since genuine conflicts in the medical record are for the Commissioner to resolve, *Veino,* 312 F.3d at 588, the ALJ properly gave Dr. Zahn and PA Higby's 2014 opinions and Dr. O'Reilly's 2016 opinion only some weight.

Since the RFC is supported by Dr. Perkins-Mwantuali's opinion, Dr. Zahn's 2016 opinion, and portions of Dr. O'Reilly's opinion, and the ALJ sufficiently explained his

reasoning for the weight he gave to each opinion, remand is not required. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 F. App'x at 56 (citation omitted).

> **4.**   Plaintiff's activities support the RFC.

Plaintiff reported that she drives a car and can go out alone. (T. 49, 215.) She can care for her own personal hygiene and dress herself. (T. 51, 213-214, 488.) She shops, and does some household chores, although she must rest at times when doing them. (T. 50, 215- 216, 488.) She can prepare meals daily, and do some yard work, although she needs some help at times. (T. 214-215, 488.) She does home exercises, reads and sews. (T. 216, 488, 587.) One of her treating providers suggested she do cardiovascular exercises. (T. 588.) She regularly visited her father who lives near her and she was able to travel to Sacramento, California during the relevant period. (T. 217, 534.) The Court finds these activities of daily living, reviewed with her medical treatment and the medical opinions, also support the RFC. *See* 20 C.F.R. §§ 404.1529, 404.1545(a)(3) (ALJ required to consider all the evidence of record including claimant's statements with respect to daily activities).

> **C.**   The ALJ's Finding at Step Four

The ALJ found Plaintiff was not disabled at step four based upon her ability to perform her past relevant work as a customer service representative because the work-related activities of that job as described in the DOT were not precluded by the Plaintiff's RFC. (T. 22.) Plaintiff argues the ALJ erred in failing to resolve conflicts between VE Voss' testimony and the DOT definition of the job in violation of SSR 00-4p ("the Ruling"). (Dkt. No. 9 at 23-25.) The

alleged conflict stems from the definition of the customer service representative job which requires frequent reaching, and lifting up to 20 pounds occasionally and 10 pounds frequently, and the RFC finding which limits Plaintiff to occasional reaching, pulling, pushing, and carrying objects up to 10 pounds with the right arm.  (T. 36.)  "The Ruling requires the Commissioner to 'obtain a reasonable explanation' for any '*apparent*' --- even if non-obvious --- conflict between the [DOT] and a vocational expert's testimony."  *Lockwood v. Commissioner*, 914 F.3d 87, 92 (2d Cir. 2018) (citing SSR 00-4p, 2000 WL 1898704, at *2); *see also Brault v. Commissioner*, 683 F.3d 443, 446 (2d Cir. 2012) ("a VE whose evidence conflicts with the DOT must provide a reasonable explanation to the ALJ for the conflict.").

Here, the VE explained her testimony regarding Plaintiff's ability to perform her past relevant work as a customer service representative was consistent with the DOT and its companion publications.  (T. 35-36.)  Upon further questioning, the VE testified the Plaintiff could perform the job of customer service representative even with the limitation of occasional reaching with her right arm because she would still be able to perform the activity with the other arm.  (T. 36.)  The VE explained she interpreted the DOT in that fashion based upon her 30 years of experience as a rehabilitation counselor, and because she had seen customer service jobs performed.  (T. 37-38.)  The VE also testified she did not need to witness the performance of the specific customer service job at issue in order to interpret how it was performed because customer service jobs share general characteristics.  (*Id.*)

The Court concludes the ALJ fulfilled his obligation with respect to any apparent contradiction between the VE's expert testimony regarding Plaintiff's ability to perform her past relevant work as a customer service representative given her RFC and the DOT's description of that job.  The VE's testimony provides a reasonable explanation for the conflict which, in turn,

provides a basis for the ALJ's reliance on it.  The conflict was identified and described by the VE regarding the reaching issue, and she provided a plausible explanation regarding why her testimony was consistent with the DOT concerning Plaintiff's ability to perform the requirements for the customer service representative job of frequent reaching with her left upper extremity.  Accordingly, the Court concludes that any conflict between the VE's testimony and the DOT does not provide a basis for remand because the ALJ's reliance on the VE's testimony rather than the DOT was both legally proper and supported by substantial evidence.

## VI.    CONCLUSION

Considering the foregoing, the Court finds the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 11, 2020

Therése Wiley Dancks
United States Magistrate Judge

Syracuse, New York